CHILES
*vs*
TODD.

Wherefore, the judgment is affirmed.

*Morehead & Reed* for appellant: *Owsley & Goodloe* for appellees.

---

REPLEVIN.

*Case* 29.

October 4.

The case stated.

# Chiles *vs* Todd.

ERROR TO THE FRANKLIN CIRCUIT.

*Common Schools.    Collectors.    Warrants.*

JUDGE BRECK delivered the opinion of the Court.

UNDER a warrant of the Trustees of Common Schools, for the 23d School District in the county of Franklin, Todd, as collector, levied upon a piece of cloth, the property of Chiles, for the school tax assessed upon him and his property in said district—whereupon, Chiles brought his action of replevin. Todd made avowry, upon which the plaintiff took issue. A verdict was found for Todd and judgment for restitution was rendered, from which Chiles prosecutes this writ of error.

Todd, in his avowry, in justification of the taking, relies, that he was, at the time, acting as collector of school tax in said district in which the plaintiff resided, by virtue of the warrant of the Trustees of Common Schools in said district, and which warrant authorized and required him to collect, from the taxable inhabitants of said district, the several sums which had been assessed against them and their property for Common School purposes; and in said list the plaintiff was assessed the sum of $22 90 taxes, and that to raise and pay said sum, he, in virtue of said warrant, levied on said cloth. He makes profert of the warrant.

The plaintiff, in his replication or plea, says, that Todd was not such collector, nor did such warrant issue, nor

were there such Trustees having legal authority to issue such warrant, nor was there any legal assessment against him as alledged.

Without stopping here to inquire whether it was essential to the justification of the defendant to show that the district had been legally organized, as much testimony had been adduced upon that subject, we will first examine it, and also the objections urged by the plaintiff as fatal to a legal organization.

It appears that the county of Franklin, pursuant to the regulations of the statute upon the subject, was laid off into School Districts, and thereupon the County Court made an order that the Commissioners proceed, as directed by law, to take the vote of the citizens in said district as to the adoption of the system, &c.; that notice was given; a meeting held in the 23d district on the 26th October, 1840; the system adopted; Trustees and other officers appointed, and a vote to levy a tax sufficient to raise not more than $2500 nor less than $2000.

The objections to these proceedings are, 1st. That the County Court of Franklin did not take the sense of the citizens in said district as to the adoption of the Common School System therein, nor fix the time of the meeting, as required by the 9th section of the law of 1838, concerning Common Schools, (3 *Stat. Law*, 530.)

To determine upon the validity of this objection, it will be necessary to advert to other provisions of the act referred to.

The tenth section of the act provides for the appointment, in each district, of five Commissioners, whose duty it shall be, among other things, to give the necessary notice and superintend the voting required in the ninth section.

The sixteenth section of the same act provides, that it shall be the duty of the Commissioners, within twenty days after their appointment, or as soon thereafter as may be convenient, to give ten days' notice, by advertisement, at at least three public places in the different districts, of their respective counties, appointing the time and place for public meeting in such districts. The meetings provided for in this section, we apprehend, are meetings for

*Margin note right column:*

CHILES
*vs*
TODD.

It is not necessary to give validity to the action of a school district, in adopting the system of Com. Schools, that the time of the meeting for that purpose shall be fixed by the County Court.

CHILES
vs
TODD.

taking the votes of the citizens upon the question of adopting the system.    It cannot have reference to a meeting after the organization of the district, as the law makes provision for the government of the district, when organized, by Trustees. ' And besides, the meetings are to be held in the different districts in the county, not in such as may have adopted the system, but in all.    Taking into consideration, therefore, all the provisions of the act referred to, we come to the conclusion, that it was not contemplated by the Legislature, that the County Court was to attend the meetings for taking the question of *adopting the system*—nor was it contemplated that such meetings were to be held or controlled by persons appointed by the Court.    But in this case, as we have seen, the Court direct the Commissioners to proceed, as required by law, to take the vote.  The Court does not, however, designate the time when the meeting in the district in question was to be held—upon this point there is certainly some confliction between the ninth and sixteenth sections. The latter section makes it the duty of the Commissioners to appoint the time and place of meeting in each district, and prescribes the notice and the mode of giving it. The Commissioners are directed, as soon as may be convenient after their appointment, to give the prescribed notice.    Their action in the matter seems to be independent and irrespective of the County Court, so far at least as relates to the notice and time of holding the meeting.    We are, therefore, of opinion that it was not essential to a legal organization of the district, that the County Court should have designated the day on which the meeting was to be held for taking the vote upon the question of adopting the system.

A *majority* of the School Commissioners of a county failing to attend the voting of the citizens for the adoption of the system of Com. Schools, if the vote be fairly taken and upon due notice, will not invalidate the organization.

2d.  It is insisted that only one of the Commissioners was present when the meeting was held in the district in question, and the system adopted.    At that time the number of Commissioners in each county had been reduced from five to three.

The object of the statute in requiring the Commissioners to give notice and superintend the voting in each district, was to secure the calling of a meeting in each district, and that the sense of the citizens should be fairly,

CHILES
*vs*
TODD.

taken ; and further, that the Board of Education, through the Commissioners, might be correctly informed as to the result of such voting. We think it may be well questioned, whether it was contemplated that all or a majority of the Commissioners should attend every meeting. Such a construction would very much increase their labor and necessarily delay the determination of the important question, whether the people in the several districts were or not, in favor of the system. But conceding that the law made it the duty of a majority of the Commissioners to attend, and that instead of a majority, only one of them was in attendance, we are not prepared to say, if due notice was given, if the meeting and voting were fairly conducted, and the requisite majority was in favor of the adoption of the system, that the mere fact that a majority of the Commissioners were not present, should invalidate the organization. The law vested in them no power of controlling the meeting; they had no authority to permit or reject those who might make application to vote. Their province was rather to aid and assist, by explaining the law and mode of proceeding, and to communicate the result to the Board of Education. It was competent, under the provisions of the statute, for the citizens, when assembled, to choose their Chairman and Clerk or Secretary, and to control and direct the proceeding. This was done in this case, and there is no proof nor suggestion that the whole matter was not conducted with fairness and propriety. And as the testimony conduces to prove that such notice of the original meeting was given as the law required, and that a majority voted for the adoption of the system, we are of opinion that the objections taken to the organization of the district, are not tenable.

But it is further insisted that Todd was not a legal collector. We think this objection is also untenable. In November, 1841, at a district meeting, Coghlan was appointed collector. In August, 1842, the Trustees appointed Todd in his place, and upon the ground that he had failed to execute bond according to law. The appointment by the Trustees, is expressly authorized, provided the office is not filled by a district meeting, within

The Trustees of common schools may appoint their collector and fill vacancies in that office whenever they happen. A collector appointed, failing to give bond from Nov. 1841, to August, 1842, authorized

CHILES
vs
TODD.

the Trustees to
make another
appointment.

Collectors of
common. school
tax have the
same power as
Sheriffs, and a
general warrant,
with a list of the
amount assessed
on each person
subject to tax, is
valid.

one month after it becomes vacant. The law declares the office of collector vacant, whenever he fails to execute bond as required. When this was, the record does not show: but as the first collector was elected in November, 1841, the presumption, we think, should be indulged, that the action of the Trustees upon the subject, in August, 1842, in the appointment of Todd, was authorized and legal.

The last serious objection urged by the counsel for the plaintiff is, that the warrant under which the collector acted, is not authorized by the statute, and if it is, that it is unconstitutional and void. It is made the duty of the Trustees to make out a tax list, containing the names of the taxable inhabitants residing in the district, and the amount of tax payable by each, and to append thereto a warrant, directed to the collector, for the collection thereof. The law in this respect, we think, has been substantially complied with; and we are also of opinion, with such list and warrant, the levy by the collector, in this case, was justifiable. The thirty-sixth section of the statute in question, expressly vests the collector with the same power and authority to collect a district tax, that Sheriffs and other collectors of revenue and county levy have, and authorizes him to proceed in-like manner. We cannot regard the proceeding so alarming and so subversive of the great principles of free government, as the counsel for the plaintiff seems to apprehend. Every Sheriff has, in effect, the same general warrant for the collection of the revenue that is furnished the district collector.

From the view which we have taken of the case, it results that the motion for a new trial was properly overruled by the Court below.

Wherefore, the judgment is affirmed.

*Owsley & Goodloe, Harlan & Craddock* for plaintiff: *Cates & Lindsey and Monroe* for defendant.